UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE OAKLAND MEDICAL CENTER, LLC
d/b/a DOCTOR'S HOSPITAL OF MICHIGAN
    Debtor,

YATINDER SINGHAL,
    Appellant,                                            Case No. 18-12147

v.

BASIL SIMON, as Trustee                         HON. AVERN COHN
    Appellee.
_____/

## MEMORANDUM AND ORDER ADOPTING BANKRUPTCY COURT'S REPORT AND RECOMMENDATION (Doc. 11)

### I. INTRODUCTION

This is a bankruptcy case. Basil Simon, as trustee of the Oakland Physician Medical Center, LLC Liquidation Trust ("Trustee"), sued Yatinder Singhal ("Singhal") in bankruptcy court (Adv. Doc. 102).[1] The second amended complaint contains seven counts:

- Count I: Re-characterization of Any Advances by Defendant
- Count II: Fraudulent Transfers (11 U.S.C. §§544, 548, 550, 551)
- Count III: Avoidance of Fraudulent Transfers (MCL §§566.31 et seq.)
- Count IV: Breach of Statutory Duty (MCL 450.4401 et seq.)
- Count V: Conversion – Common law and Statutory (MCL 600.2919)
- Count VI: Equitable Subordination (11 U.S.C. §510)
- Count VII: Claim Disallowance (11 U.S.C. § 502)

---

[1] Case Number 16-05120-mlo.

1

(Adv. Doc. 102). Singhal objected to bankruptcy court jurisdiction and filed a motion to withdraw the reference, which the Court granted as to the Count IV (Breach of Statutory Duty) and Count V (Conversion). Specifically, the Court said:

> Singhal has the right to withdraw Counts IV and V because they are "non-core" proceedings that entitle him to an Article III court determination. However, this Court has the authority to direct the bankruptcy court to "recast its judgment as to [the] claims as proposed findings of fact and conclusions of law, which the district court shall review *de novo*." Waldman v. Stone, 698 F.3d at 910, 922 (2012); see also Fed. R. Bankr. P. 9033(d); 28 U.S.C. § 157.

(Doc. 10). Accordingly, the bankruptcy court filed a report and recommendation ("R&R") regarding the withdrawn claims. (Doc. 11). The bankruptcy court's R&R recommends: (1) granting summary judgment in favor of Trustee on Count V (Conversion) in the amount of $1,078,500.00; (2) granting summary judgment in favor of Singhal on Count V (Statutory Conversion); and (3) denying Singhal's summary judgment motion on Count IV (Breach of Statutory Duty). (Doc 11).

Singhal filed objections relating to the bankruptcy court's R&R, specifically, the portion that recommends granting summary judgment on the common law conversion claim. (Doc. 12). Because there are no objections before the Court as to the R&R's other findings, the Court adopts that portion of the R&R verbatim; summary judgment in favor of Singhal on Count V (Statutory Conversion) is GRANTED, and Singhal's summary judgment motion on Count IV (Breach of Statutory Duty) is DENIED. The Court need only decide Singhal's objections to the common law conversion claim.

The Court held oral argument on the issue of common law conversion. The Court noted that although Singhal says he is entitled to dispute "the quantum of damages for which [he] would be liable," he did not submit evidence (or even argument)

2

that contests the amount of damages shown by Trustee. (Doc. 12). Accordingly, the Court permitted Singhal to submit supplemental briefing for the purposes of disputing damages. Singhal submitted a supplemental brief (Doc. 16), and Trustee filed a responsive brief. (Doc. 17).

Now before the Court is the bankruptcy court's R&R and the related objections. (Docs. 11, 12, 13, 16, 17). For the following reasons, the bankruptcy court's R&R is adopted in full; Trustee's motion for summary judgment for common law conversion in the amount of $1,078,500.00 is GRANTED.

## II. BACKGROUND

Oakland Physicians Medical Center, LLC, d/b/a Doctor's Hospital of Michigan, operated a student program that accepted students from different medical schools for clinical rotations. In return, the medical schools agreed to compensate the Trustee, which was memorialized by several contracts. Relevant here were the Ross University School of Medicine ("Ross") agreement and the Windsor University School of Medicine ("Windsor") agreement.[2]

At all relevant times, Singhal was a member of Trustee's board of directors. Also, Singhal held a 50% interest in two corporate entities with other doctors: American Medical Education Group, LLC ("AMEG") and DHOM Education. Although Singhal was not authorized to "take action on behalf of the [Trustee] in his [] individual capacity except pursuant to specific authorization by the Board of Directors," Singhal redirected payments under the Ross and Windsor agreements to AMEG and DHOM. (Doc. 11, p. 10). Singhal's actions redirecting payments to AMEG and DHOM—in which he had a

---

[2] The details of these agreements are discussed in the bankruptcy R&R and do not need to be repeated here.

3

50% interest—that the Trustee was entitled to under the Ross and Windsor agreements, forms the basis for Trustee's common law conversion claim.

### III. BANKRUPTCY COURT'S R&R

The bankruptcy court found no evidence that Singhal had board approval to redirect the payments under the Ross and Windsor agreements. The R&R discusses Singhal's deposition, which Singhal says creates an issue of material fact. The R&R illustrates that nothing Singhal said evidences that he had authorization to redirect the payments. See (Doc. 11, p. 11–12).

The R&R also addresses the issue of missing board minutes. There are no meeting minutes for the board from October 17, 2011 to December 21, 2012 and from May 13, 2013 to November 27, 2013. There is no evidence that suggests board approval is contained in the missing minutes, however, there *is* evidence that neither AMEG nor DHOM had authorization to redirect payments. (Doc. 11, p. 13). The R&R says that Singhal cannot point to the absence of evidence to create a factual dispute, especially when there is affirmative evidence to the contrary.

The R&R engages in a detailed legal discussion and concludes that Singhal's redirection of payments (and/or the right to payments) constitutes common law conversion.

### IV. SINGHAL'S OBJECTIONS

Singhal has six objections to the R&R. (Doc. 12). First, Singhal takes issue with the R&R's conclusion that he waived his right to dispute the amount of damages stated in Trustee's motion. Singhal says that he did not need to argue damages to preserve his right to do so later.

4

Second, Singhal says that the R&R failed to follow proper standards for summary judgment. Singhal says that the bankruptcy court made evidentiary determinations, which should be left to a jury.

Third, Singhal says that the R&R erred in finding that his testimony regarding board approval did not create a genuine issue of material fact. He says that the record shows that he received approval from the Board of Directors, or at least, there is a genuine issue of fact regarding whether he had board approval.

Fourth, Singhal takes issue with the R&R's conclusion that the redirection of payments from Ross and Windsor to AMEG and DHOM constituted common law conversion. He says that the bankruptcy court did not cite any cases where the right to payments constituted common law conversion. In addition, he says that because no specific money can be traced to him, he cannot be liable for common law conversion.

Fifth, Singhal says that the R&R erred in rejecting his *in pari delicto* defense. He says that Trustee's argument—that conversion was not a crime—was insufficient to defeat his *in pari delicto* defense.

Sixth, Singhal says that the R&R erred in concluding that he owed damages to Trustee for conversion in the amount of $1,078,500.00. He also says the Trustee settled $490,000 of the $1,078,500.00 claim with one of his business partners, and as a result, a judgment for $1,078,500 is erroneous and entitles Trustee to double recovery.

### V.  APPLICABLE LAW

In Michigan, "[i]t is a familiar principle that the agents and officers of a corporation are liable for torts which they personally commit, even though in doing so they act for the corporation, and even though the corporation is also liable for the tort." Warren Tool Co. v. Stephenson, 11 Mich.App. 274, 300 (1968) (citing Zaino v. North Woodward

5

Construction Company, 355 Mich. 425, 429 (1959); Allen v. Morris Building Company, 360 Mich. 214, 218 (1960); Wines v. Crosby & Co., 169 Mich. 210, 214 (1912); Bush v. Hayes, 286 Mich. 546, 549 (1938); Hempfling v. Burr, 59 Mich. 294, 295 (1886)). Thus, "[c]orporate officers are not excused from personal liability for the conversion of other people's property simply because the corporation benefits from the wrong and because the corporate officers realize no personal profit from their acts of conversion." Id. at 300–301. (citing Bush 286 Mich. at 549; Hirsch v. Philly, 4 N.J. 408, 73 A.2d 173, 177 (1950)); see also Courtney W. Franks, *Analyzing the Urge to Merge: Conversion of Intangible Property and the Merger Doctrine in the Wake of Kremen v. Cohen*, 42 HOULR 489 (2005) (stating "a person can be held liable to the true owner of stolen personal property for conversion notwithstanding that he or she acted in the utmost good faith . . .").

Common law conversion in Michigan is defined as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." Foremost Ins. Co. v. Allstate Ins. Co., 439 Mich. 378, 391 (1992) (citing Nelson & Witt v. Texas Co., 256 Mich. 65, 70 (1931); Thoma v. Tracy Motor Sales, Inc., 360 Mich. 434, 438 (1960); Citizens Ins. Co. v. Delcamp, 178 Mich.App. 570, 575 (1989)). "The act of dominion is wrongful when it is inconsistent with the ownership rights of another." Armstrong v. O'Hare, Case No. 08-118283, 2014 WL 1614474 at *4 (April 22, 2014) (citing Check Reporting Servs. Inc. v. Mich. Nat'l Bank-Lansing, 191 Mich.App. 614, 626 (1991)).

"Initially . . . conversion was limited to tangible property." Franks, *supra*, at 498. "However, few will now dispute that intangibles have value, and the other reasons for

6

denying recovery for converted intangibles are holdovers from the old pleading requirements—hardly valid reasons to deny recovery today." Id. (quoting Val D. Ricks, *The Conversion of Intangible Property: Bursting the Ancient Trover Bottle with New Wine*, 1991 BYU L. Rev. 1681, 1700 (1991)).[3] Thus, the property at issue here can be the subject of a conversion claim, regardless of whether the Court considers it as the taking of monies (tangible), or a right to payment (intangible). See Warren Tool Co., 11 Mich.App. at 300 (holding that a negotiable instrument may be the subject of conversion and that diverting a right to payment can amount to conversion of a personal property interest).

As to damages, if one joint tortfeasor pays "a lump sum in exchange for a release, and a judgment is subsequently entered against the non-settling tortfeasor, the judgment is reduced *pro tanto* by the settlement amount." Markley v. Oak Health Care Investors of Coldwater, Inc., 255 Mich.App. 245 (2003). This principle is known as the common-law rule of "setoff." See Id. However, the common-law rule of setoff has "generally [] been abrogated in Michigan." K.S. v. Detroit Public Schools, 153 F.Supp.3d 970, 982 (E.D.Mich. 2015). Also, applying the setoff rule presupposes that the parties are joint tortfeasors, and that the settlement reached as to one party amounts to a parallel claim against the non-settling party.

Michigan courts have said that the general rule prohibiting unjust enrichment by "double recovery" is not offended simply because there may be "some overlap" between co-defendant's conduct. Id. On the contrary, Michigan courts have recognized that

---

[3] For a discussion on the evolution of common law conversion principles in Michigan, see Aroma Wines & Equip., Inc. v. Columbian Distribution Servs., Inc., 497 Mich. 337 (2015).

"there is no rigid rule against overcompensation," and "making tortfeasors pay for the damages they cause can be more important than preventing overcompensation." Id.

## VI. DISCUSSION

### A. First Objection

Singhal objects to the R&R's conclusion that he waived the right to dispute the amount of damages relating to Trustee's conversion claim. Singhal concedes that he did not contest the specific dollar amounts, but says that he is nonetheless entitled to dispute the amount of damages for which the bankruptcy court found him liable. (Doc. 12, p. 2). However, Singhal does not go on to say why the damages calculation was erroneous. Even in his supplemental briefing, Singhal focuses on what was done with the money **after** the alleged conversion took place. (Doc. 16). As stated in the legal discussion above, what Singhal did with the money after the conversion, even if it was for the benefit of AMEG, or even the Trustee, is immaterial as to whether he can be found liable for conversion.

The Court need not decide whether Singhal waived his right to contest damages, because he has failed to submit relevant evidence that would dispute the damages calculation. To the extent that the remaining objections dispute damages, the Court will consider each objection—without deciding that the argument has been waived.

### B. Second and Third Objections

Singhal says that the bankruptcy court failed to follow the proper standards for summary judgment. Singhal says that the R&R failed to recognize that evidence determinations are not to be made by the judge, but rather, by the jury. Further, Singhal says that even if the bankruptcy court did apply the appropriate standard, it improperly determined that there was no genuine issue of material fact.

8

The R&R contains an accurate discussion of the applicable standard for summary judgment. The Court agrees with the R&R; Singhal cannot advance pure legal argument that the missing board minutes may contain favorable evidence that would create a factual dispute. He has not submitted any evidence of board approval, thus, the bankruptcy court did not improperly weight the credibility of evidence, as Singhal suggests. Instead, the bankruptcy court properly noted that the absence of evidence, in this case, is not enough to create a reasonable dispute of fact.

Singhal references a letter, dated Wednesday, February 6, 2013, which he wrote requesting that all payments be redirected to AMEG. In the letter, he states that the redirection of payments was decided by the Board of Directors "earlier this week." (Adv. Doc. 102). While it is true Singhal represented in his letter that he had board authorization to redirect the funds, there is no evidence that such Board Approval was actually given. The issue here isn't whether Singhal redirected payments under the guise of board approval, the issue is whether board approval was given.

Accordingly, Objection #2 and #3 are overruled.

### D. Fourth Objection

Singhal says that the R&R erred in concluding that the redirection of payments from Ross and Windsor to AMEG and DHOM constituted common law conversion. In support of this objection, Singhal makes several arguments, which are as follows:

First, Singhal says that the R&R "cites no case where redirecting an intangible such as the right to payment, or the payments themselves constitutes common law conversion." (Doc. 12, p. 7). This is untrue. The bankruptcy court cites Tuuk v. Anderson, 21 Mich. App. 1, 13–14 (1969) and Warren Tool Co. v. Stephenson, 11 Mich.

App. 274, 298, (1968), which support the proposition that "intangible personal property can be the subject of conversion." (Doc. 11, p. 15).

Second, Singhal says that "there must be proof that the intangible personal property is connected to something tangible." (Doc. 12, p. 7). Singhal then cites <u>Warren</u> and <u>Tuuk</u>, which relate intangible personal property rights to a (tangible) negotiable instrument. However, the Ross and Windsor agreements are analogous to the negotiable instruments at issue in <u>Warren</u> and <u>Tuuk</u>. Additionally, the right to payment can be connected to money, which is tangible property. Singhal's attempts to contrast <u>Warren</u> and <u>Tuuk</u> are not persuasive.

Third, Singhal says that "students are not property and Singhal could not have exercised ownership or control over them." (Doc. 12, p. 7). This argument has no merit. As stated above, the property at issue is the right to payment, and money owed, under the Ross and Windsor agreements. The issue before the Court is not whether Singhal stole medical students.

Fourth, Singhal says that Trustee failed to prove that money was "entrusted to his care," which he says is a legal requirement. (Doc. 12, p. 7). In support of this argument, Singhal cites to <u>Lawsuit Financial, LLC, v. Curry</u>, 261 Mich. App. 579 (2004). However, in <u>Lawsuit Financial</u> the court held that "plaintiff failed to state a claim for common law conversion because it failed to allege that defendant['s] initial exercise of domain over the property was in fact wrongful." 261 Mich.App. at 591–592. But that is not the case here. Here, Trustee alleged that the redirection of payments (the initial exercise of domain over the property) was wrongful (*i.e.* Singhal did not have board approval). Further, contrary to Singhal's argument, the law does not require monies be

"entrusted to a person" before they can be held liable for common law conversion. See, e.g. Aroma Wines & Equip., Inc. v. Columbian Distribution Servs., Inc., 497 Mich. 337, 346 (2015).

Fifth, Singhal says that Trustee failed to trace the money transferred from Ross and Windsor to AMEG and DHOM. However, tracing converted money back to Singhal is a requirement of a statutory conversion claim, not a common law conversion claim. See Aroma Wines, 497 Mich. at 358. Redirecting payments that were owed to the Trustee is enough to constitute common law conversion.[4]

Lastly, Singhal says that he is a separate and distinct entity from AMEG and DHOM, which are not a party to this case, and without piercing the corporate veil, he cannot be held liable.[5]

As stated above, in Michigan, "[i]t is a familiar principle that the agents and officers of a corporation are liable for torts which they personally commit, even though in doing so they act for the corporation, and even though the corporation is also liable for the tort." Warren, 11 Mich.App. at 300. "Corporate officers are not excused from personal liability for the conversion of other people's property simply because the corporation benefits from the wrong and because the corporate officers realize no personal profit from their acts of conversion." Id. at 300–301. Thus, Singhal is not

---

[4] "Money is treated as personal property and may support a conversion claim if there is an obligation to deliver the money in question, and if the money is identifiable." CH Holding Co. v. Miller Parking Co., 534 B.R. 308, 318 (E.D. Mich.2015) (quoting Dunn v. Bennett, 303 Mich.App.767, 778 (2013)).

[5] This is not an objection, but instead a new argument that was not before the bankruptcy court. Thus, the argument has been waived. See Murphy v. P&G Co., 695 F.Supp.2d 600, 603 (E.D. Mich. 2010); Humphrey v. U.S. AG Office, 279 Fed. Appx. 328, 331 (6th Cir. 2008). Nevertheless, the Court will address the merits of the objection.

protected by the corporate veil, under these circumstances, for committing the tort of common law conversion.

### *E. Fifth Objection*

Singhal says that the bankruptcy court erred in rejecting his *in pari delicto* defense. He says that the bankruptcy court should have upheld his defense because Trustee only contested one element of the defense.[6] The *in pari delicto* defense has two requirements:

1. **The plaintiff's conduct** must be prohibited or almost entirely prohibited under a penal or criminal statute; and

2. A sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages.

Orzel v. Scott Drug Co., 449 Mich. 550, 539 (Mich. 1995) (emphasis added). Singhal says that larceny by conversion, M.C.L. 750.362, is a crime, then cites In re B & P Baird Holdings, Inc., 591 Fed. Appx. 434, 442–443, (6th Cir. 2015). However, Baird dealt with the *in pari delicto* defense and pleading requirements. Id. (stating that a proposed pleading amendment could not be denied as "futile" if the underlying wrongful conduct regarding the *in pari delicto* defense had not been established). Singhal makes no logical connection between the cited case, or the fact that conversion is a crime, and his defense of *in pari delicto*.

*In pari delicto* is a Latin phrase that roughly translates to "in equal fault." The defense of *in pari delicto* arises when **both parties** in a civil action have committed wrongdoing. Thus, for Singhal to succeed on a defense of *in pari delicto*, he must show

---

[6] Debtor claimed that Michigan's wrongful conduct rule, or the *in pari delicto* defense, is not applicable unless a criminal or penal statute is involved. (Adv. Doc. 121, p. 13), (citing Orzel v. Scott Drug Co., 449 Mich. 550, 561; (1995) ("the conduct must be prohibited or almost entirely prohibited under a penal or criminal statute").

12

that the Trustee engaged in some wrongful conduct. He has not. Accordingly, Objection #5 is overruled.

### F. Sixth Objection

The Court interprets Objection #6 as an extension of Objection #1. Singhal disputes the award of damages (again, saying he never waived his right to do so). Singhal says that the bankruptcy court erred in concluding that he could be held liable in conversion for the amount of $1,078,500. Singhal says that the damages should be setoff by the fact that Dr. Hemady received $490,000 from AMEG, which was eventually settled with the Trustee for $250,000 (Adv. Doc. 113, p. 15). He says that the R&R incorrectly calculated damages, and that he can only be held liable for $514,200.[7] Singhal supports this argument by citing law that says joint and several liability is an impermissible remedy for common law conversion.

However, Singhal's objection misses the mark. The evidence shows that Singhal alone was responsible for converting the Trustee's money (and/or right to payments). See e.g., (Doc. 11, p. 8) (citing Adv. Doc. 102, Ex. D; a letter from Singhal instructing Ross to redirect all payments to AMEG.). Whether Singhal distributed the converted funds to several doctors, or kept the entire amount for himself, does not affect his liability to Trustee for the full amount of his conversion. In other words, if a person steals $1,000,000, they are liable for $1,000,000; the fact that they gave $500,000 to a third-party does not alleviate any liability. Because Singhal was responsible for the conversion of $1,078,500, the R&R did not err in its damages calculation.

---

[7] Singhal received $456,000 from AMEG and $58,200 from DHOM; in total, Singhal received $514,200 in the alleged conversions.

13

Singhal says that he is entitled to a setoff for the amount of the settlement reached between Trustee and Dr. Hemady, who is Singhal's 50% partner in AMEG. However, the settlement between Trustee and Dr. Hemady related to different claims and/or theories of liability. It appears that $60,000 of the $250,000 settlement related to a turnover claim under 11 U.S.C. §542 and the remaining $190,000 relates to unearned monies. (Doc. 13, p. 19). Because the claims against Hemady were not parallel claims of conversion, and the law allows for "some overlap," while not barring double recovery, the Court sees no reason to setoff the Hemady settlement amount from Singhal's liability for conversion. Accordingly, Objection #6 is overruled.

## VII. CONCLUSION

For the reasons stated above, the R&R is adopted in its entirety. The Trustee's motion for summary judgment on Count V – Common Law Conversion in the amount of $1,078,500.00, is GRANTED; Singhal's motion for summary judgment on Count V - Statutory Conversion is GRANTED; and Singhal's summary judgment motion on Count IV (Breach of Statutory Duty) is DENIED.

SO ORDERED.

                                                    s/Avern Cohn
                                                    AVERN COHN
                                                    UNITED STATES DISTRICT JUDGE

Dated: 8/13/2019
Detroit, Michigan